UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS HENRY BLUMENTHAL,

    Plaintiff,

v.

Case No. 2:08-cv-273
HON. GORDON J. QUIST

JIM ARMSTRONG, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner Thomas Henry Blumenthal filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Jim Armstrong, Michael Curley, Robert Darnell, Mary Majurin, Michael Martin, Rhonda McGuire, Dan Quigley, Jim Usitalo and James Vilgos. Plaintiff alleges in his complaint that he had been approved for a Kosher diet in October 2006 while confined at the Muskegon Correctional Facility. Plaintiff was transferred to the West Shoreline Correctional Facility in October 2007. That facility did not provide Kosher meals. Plaintiff apparently made no complaints about his lack of a Kosher diet while confined at the West Shoreline Correctional Facility. In fact, plaintiff routinely purchased non-Kosher food items from the prison store while at that facility. Plaintiff was transferred to the Ojibway Correctional Facility on February 12, 2008. Plaintiff discussed his Kosher status upon his arrival with defendant McGuire who advised that plaintiff should contact the prison Chaplain. Plaintiff met with prison Chaplain Vilgos who later discovered that plaintiff had been on a Kosher diet prior to his arrival at the West Shoreline Correctional Facility. Defendant Vilgos learned that the West Shoreline Correctional Facility did

not provide Kosher meals and that plaintiff had been eating non-kosher prison store bought items routinely. As a result, a Notice of Intent to remove plaintiff's Kosher diet designation was issued. Plaintiff was removed from the Kosher diet status for purchasing non-Kosher items. Plaintiff's request for reinstatement to the Kosher diet program was denied.

Defendants argue that plaintiff has failed to exhaust each of his claims against each of the named defendants and move to dismiss the unexhausted claims. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

Plaintiff failed to name defendants Jim Armstrong, Mary Majurin, Michael Martin and Dan Quigley in any of his grievance filings. Plaintiff failed to name defendant Jim Usitalo in a Step I grievance. MDOC Policy Directive 03.02.130(R) requires plaintiff to specifically name the individuals in his grievance. Further, plaintiff must name the individuals in his Step I grievance, and then exhaust his claims regarding the named individual through each step of the process. A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the

problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005); *Burton v. Jones*, 321 F.2d 569, 574-75 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). In the opinion of the undersigned, defendants Armstrong, Majurin, Martin and Quigley have shown that plaintiff failed to exhaust his grievance remedies against them.

Defendants have also moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also*

*Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff filed an amended complaint to add the claim that defendants violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Section 2000cc-1 states:

> (a) General Rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). Plaintiff's RLUIPA claim, which involves the same factual analysis as a First Amendment claim under the facts presented in this case, will be considered.

Defendants claim that they are entitled to summary judgment on plaintiff's claim that the denial of a Kosher diet violated his First Amendment right to freely exercise his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any

regulation which infringes upon it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative'

test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added). A claimant need not be a member of a particular organized religious denomination to show sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the Plaintiff's assertion that he was Jewish for the correct test – whether the Plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a Kosher diet. *Id.* at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the continuing issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id.* at 1523.[1]

---

[1] The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

As noted by the Tenth Circuit in *Mosier*[2], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

        In support of their motion for summary judgment, Defendants assert that because Kosher food preparation requires special equipment and training, not every MDOC facility offers a Kosher diet. Defendants contend that, as a result, many prisoners use a religious diet request as a means of transferring to a facility of their choice. In order to avoid manipulation of this sort, the MDOC limits a Kosher diet to those prisoners whose sincere religious belief requires them to eat only Kosher foods. Defendants assert that this protects the MDOC's interest in maintaining security and order in the operation of MDOC facilities.

        Chaplain Vilgos explained the reasons why plaintiff was removed from the Kosher diet initially and why he was recommending that plaintiff should not be reinstated to the Kosher diet.

> The responses show a basic knowledge of the Kosher laws and of itself would be sufficient for this interviewer's recommendation for accommodation. Unfortunately there are also some mitigating factors which should be considered.
>
> While assigned to Muskegon Correctional Facility (MCF) Blumenthal #180578 participated in the Kosher meal program. There is no evidence that he was removed. He was transferred to West Shoreline Correctional Facility (MTF) on 10/4/2007 which does not offer Kosher meals. He apparently made no attempt to be returned to MCF to continue in this diet even though such transfers are readily given once the oversight is reported. After four month[s] of eating non Kosher foods at MTF, on 2/12/08 he was transferred to Ojibway Correctional Facility. He quickly kited the Chaplain requesting Kosher accommodation. The chaplain notified the appropriate staff regarding his request but when it was noticed that he had already been

---

[2]*See Mosier*, 937 F.2d at 1523.

eating non Kosher foods not only in the Dining Hall but through his store orders, he was disqualified from Kosher accommodation. As stipulated in OP 05.03.150 after 60 days he was eligible to reapply, which he did.

In examining his store records (attached) it is significant that Prisoner Blumenthal #180578 continued to order non Kosher foods from the store, for example: Chili W/beans Bushey, Peppers Jalapeno Tito's, Candy Mints Starlight, and Candy Atomic Fireballs. Prisoner Blumenthal #180578 also shows no interest in other aspect[s] of his faith, such as services or offers of Jewish literature by the chaplain.

Individuals, both incarcerated or otherwise often go through changes in the fervor they display for their religion, but in this individual's case there seems to be a direct correlation between the degree of religious fervor and his distance from home (Wayne County). Had the individual displayed any other interest in his faith other than his request to be transferred to a facility that serves Kosher foods during the 3 months he had been at Ojibway, an endorsement for accommodation would be possible. Unfortunately, based on the prisoner's actions such an endorsement is not possible.

It is worthy of note that the prisoner wears a yarmulke when he visits the chaplain but not in any other situation even though Policy authorizes it and his faith requires it. Based upon this interviewer's observation, the prisoner puts on or off his faith as easily as he does his yarmulke, and with the same degree of consideration.

While sincerity is based upon extrinsic data that is often difficult to ascertain, based upon his responses to the questions asked, and his repeated failure to keep Kosher even in his purchase of store items, I believe we should not endorse his request for a Kosher diet per PD 05.03.150 and OP OCF 05.03.150A.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which justify the refusal to provide plaintiff a Kosher diet and for the initial removal of plaintiff from a Kosher diet. Based upon the information gathered by defendants, it was not unreasonable to deny plaintiff's reinstatement request. While defendants concede that plaintiff exhibited sufficient knowledge to justify his placement on a Kosher diet, it is plaintiff's actual observed behavior that justified the refusal to allow plaintiff back into the Kosher diet program. The

policy used by the prison and the interview process is not a pass or fail test. The prison must use some objective factors to justify the decision to deny a Kosher meal request. Not every prisoner who is denied a Kosher meal request is entitled to a hearing or trial on the merits of the request in a federal court. The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court.

In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. However, a lack of adhering to Jewish religious practices in addition to purchasing non-Kosher foods from the prison store is a strong indication that a prisoner is not sincere in his religious beliefs. Under the circumstances of this case, it is the opinion of the undersigned that defendants correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available. In the opinion of the undersigned, defendants are entitled to summary judgment on plaintiff's RLUIPA and freedom of religion claims.

Accordingly, it is recommended that plaintiff's motion to amend his complaint (Docket #38) be granted.[3] It is further recommended that defendants' motions to dismiss for failure

---

[3] The court should consider the RLUIPA as an additional claim.

to exhaust (Docket #23) and for summary judgment (Docket #27) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2010